Central Railway Co. *vs.* Peacock.

(Decided 13th June, 1888.)

---

THE CENTRAL RAILWAY COMPANY *vs.* JAMES N. PEACOCK.

*Carrier of Passengers—Master and Servant—Liability of Master—Tort of Servant.*

A passenger on a street car to whom the driver, who was also conductor, had used profane and abusive language, replied: " When we get to the office of the company, I will report you," the office being at the stables, where the car stopped for a change of horses. Before reaching the stables the passenger got off, intending, as he said, to go to the office of the company and report

17                    v. 69.

Central Railway Co. *vs.* Peacock.

the driver while the horses were being changed, and then to re-sume his seat in the car, but such intention was not communi-cated to the driver. The driver seeing the passenger going to-wards the office of the company, stopped the car, and jumping off, went across the street, intercepted the passenger on the side-walk and violently assaulted him. In an action against the rail-way company by the passenger to recover damages for the injuries he had sustained, it was HELD:

That when the assault was committed, the contract of carriage had ceased; that the wrongful act of the driver was not within the line and scope of his employment, and the railway company, his employer, was not answerable therefor.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception*—The plaintiff offered the two following prayers :

1. If the jury find from the evidence that the plain-tiff was a passenger upon the defendant's car, and had gotten thereon at the corner of Lancaster street and Broadway, to ride to the corner of Preston and North streets, and had paid his fare, and that the conduct of the plaintiff, as such passenger, was becoming and proper, and that the driver and conductor of the said car used abusive and insulting language to the said plaintiff, and threatened even to strike him, and offered him other indignities while he was upon said car, and that the plaintiff when the said car approached the office of the superintendent of said defendant, left said car to report the conduct of said driver and conductor to the proper officer of said defendant, intending to return to said car after making such report, and con-tinue to ride thereon to his destination, and that the said driver and conductor followed the plaintiff and assaulted and beat him, then their verdict must be for the plaintiff.

Central Railway Co. *vs.* Peacock.

2. If the jury find for the plaintiff under the first prayer of the plaintiff, they should award the plaintiff such sum as damages as will compensate him for the injury to him pecuniarily, to his person, his feelings, and his character, arising from the unlawful act of the defendant.

The defendant offered the three following prayers:

1. That there is no evidence in the cause legally sufficient, upon which the jury can find a verdict for the plaintiff, and their verdict must be for the defendant.

2. That if the jury find from the evidence that the assault complained of in the declaration, was committed upon the plaintiff on the side walk, by the driver of defendant's car, who had left his car for the purpose of committing it, then such assault was not committed within the scope of his employment, or the limits of his implied authority, and the defendant corporation is not liable therefor, unless they find that the defendant expressly authorized said assault, or subsequently ratified and adopted the said driver's action, of which there is no evidence.

3. That if the jury believe the assault complained of was not committed within the scope of the driver's employment, or the limits of his implied authority, then the defendant is not liable therefor, unless they find from the evidence that the defendant corporation expressly authorized said assault, or subsequently ratified and adopted the act of the driver in committing it, of which there is no evidence.

The Court (STEWART J.,) granted the prayers of the plaintiff, and rejected those of the defendant. The defendant excepted. The jury gave a verdict for the plaintiff for $450.00 damages, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*George Blakistone,* and *T. Wallis Blakistone,* for the appellant.

*Joseph Pollard,* and *H. W. Latane,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This is a suit for personal injuries received by the appellee at the hands of the conductor and driver of the appellant's street car, at a time when, the appellee contends, he was a passenger and as such entitled to the protection of the appellant from the violence of its employé.

The questions in the case are, was there such evidence in the case of the appellee being a passenger of appellant when the assault was committed; and of the conductor acting in the line of his duty and scope of his employment, as justified the Court in refusing the prayer of the appellant that there was no *legally sufficient* evidence in the cause to enable the jury to find for the plaintiff.

The evidence shows that the appellee entered the appellant's car at the corner of Broadway and Lancaster street, intending to ride to the corner of Preston and North street, near which the appellee lived; and to which point he was accustomed to ride on the defendant's cars, and had been, almost daily in the habit of riding for several years in returning from his work. On this occasion as the car turned into Preston street, several ladies got into the car, and as it was full the appellee arose and gave his seat to a lady and stood in front of the seat which he had occupied. Whilst he was so standing the driver, who was also conductor, and the only officer of the car, opened the door and said to appellee, "Captain, I want you to sit down." The appellee replied I have given my seat to this lady, and there is no other, when I can get a

seat I will sit down." To this the driver replied with profane and abusive language, and told the plaintiff (the appellee) "that if he would get off the car he would fight him." To this the appellee simply replied, "when we get to the office of the company I will report you." The office of the company according to the proof was at the stables where the car stopped for a change of horses, which the appellee knew. It was "on the south side of Preston street, west of Greenmount avenue, six blocks west of Caroline street, and about one block east of North street." The entrance to the office was on Barclay street. Just after the car crossed Greenmount avenue and at its west side it was stopped for some ladies to get off. The appellee also got off at that point, intending, as he said, to go to the office of the company, (which was not yet reached) and report the driver while the horses were being changed, and then to resume his seat in the car. The car started on again and the driver, seeing the appellee going towards the office, again stopped the car *before* it had quite reached the point for stopping to change the horses, and jumped from the car from the front platform with the iron brake belonging to the car in his hand, and went straight across the street and intercepted the plaintiff on the public sidewalk at the mouth of an alley which runs south from Preston street, and exclaiming to the appellee, "God damn you, I'll give you something to report," struck him twice with the brake. The first blow felled him to his knees, when the conductor struck him again, and was prevented from giving a third blow by being seized by a police officer. Both blows were on the appellee's head and he was considerably hurt. Appellant admits that, if the appellee was a passenger *at the time,* the company was bound to protect him from injury from its employés or the ill usage of strangers in the

vehicle; but the appellant contends that not only had the appellee ceased to be a passenger, but that the driver by stopping the car and leaving the horses standing in the street, and proceeding to the sidewalk to assault the appellee, violated his duty and stepped *aside* from the line and scope of his employment; and that consequently the appellant was not answerable for his conduct.

Judge COOLEY, in his work *on Torts, page* 535, says: "the liability of the master for intentional acts which constitute legal wrongs can only arise when that which is done is within the real or apparent scope of the master's business. It does not arise when the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do." He illustrates his meaning by this statement: "So if the conductor of a train of cars leaves his train to beat a personal enemy, or from mere wantonness to inflict any injury, the difference between his case and that in which the passenger is ejected from the cars is obvious. The one is a trespass he has stepped aside to commit; the other is committed in the course of his employment." The statement of the law by this eminent jurist seems to be supported by direct decision. *Crocker vs. New London, &c., R. R. Co*., 24 *Conn*., 249; *Pittsburg, &c., Pass. R. R. Co. vs. Donohue*, 70 *Pa. St*., 119; *Evansville R. R. Co. vs. Baum*, 26 *Ind*., 70; *Wright vs. Wilcox*, 19 *Wend*., 343.

The Supreme Court of the United States, in *New Jersey Steamboat Co. vs. Brockett*, 121 *U. S*., 645, decide unequivocally that the carrier of passengers must protect his passengers from the violence of the carrier's employés, as also from that of other passengers; but there is nothing in the decision in conflict

with the doctrine, that to render liable the employé must be at the time acting in the employment of the railroad, and within the line of his duty, and the decision assumes that the party injured is a passenger when injured; for that was the fact in the case. That case only decides that the carrier is liable for the act of his servant engaged in the act of executing the contract for the transport of the passenger. To bring this case within the operation of the rule thus laid down, and no doubt rightly, it should appear from the proof that the appellee was a passenger at the time, and that the driver was executing the contract for transportation.

When the appellee entered this street car it does not appear he had a ticket to any particular point. Upon entering the car according to the well understood arrangement, the carrier was bound to take the passenger for the stipulated fare to any point within the terminii of the road where he might desire to alight. Whenever the passenger did alight that con. tract was at an end, unless his alighting was well understood by the carrier's agent to be rightful and temporary, and that he was to resume his seat. He says he alighted for a purpose, and intended to resume his place in the car and continue his journey; but this purpose was not communicated to or assented to by the driver and conductor. After he had alighted and walked a square, could he resume his place in the car without paying another fare, without the assent of the conductor? Would the conductor be justified in omitting to demand another fare? We think not. Had he remained in the car until the stables were reached and the horses were being changed, the carrier would have understood his journey was not completed, and whilst the horses were being changed he would still have been regarded as a passenger, and would have been entitled to protection as against the em-

ployés, if he then had gone into the office to execute his declared purpose to report; if *Keokuk N. Line Packet Co. vs. True*, 88 *Illinois*, 608; *Jeffersonville, &c., Railroad Co. vs. Riley*, 39 *Indiana*, 568; *and State vs. Grand Trunk Railway*, 58 *Maine*, 176, correctly lay down the law. Those cases only establish that while the car or boat may actually stop, the passenger need not confine himself to the boat, car or vehicle in order to preserve his relation and rights as a passenger. But that is not the case here; the appellee voluntarily alights a square, or block, away from where the car will stop to change horses and takes his place with other pedestrians on the sidewalk of the street. The carrier had a right to regard his contemplated trip as ended, and contract executed. He was no longer being carried as a passenger but was walking on the street. Being discovered in this act the driver, whose conduct was most outrageous and deserved the dismissal from service which followed, stopped his horses, left his car in the street, and pursuing him inflicted the injury complained of. True, he had been insulted in the car but he was not assaulted in the car. He was not forced to leave the car or ejected from it. He voluntarily left when a place was made for him to sit down by several ladies leaving the car. No matter what his intention was as to resuming his place and finishing his contemplated journey, it was not announced nor assented to. The contract was to carry him as long as he stayed in the car to the end of the route—not to let him ride and walk alternately as he chose. Whilst the contract of carriage continues the passenger must to some extent be subject to the carrier's control. The liability for his safety, and even for his conduct to co-passengers so requires. When he left the car the carrier was certainly not liable for his conduct on the street, nor for the conduct of a stranger to him on the street. Why then should the

appellant be answerable for the assault if its driver, who actually stopped his team, and left it in the street with his passengers unguarded, in order that he might pursue his victim and knock him down. In doing this he cannot be regarded as acting within the sphere of his duty or scope of his authority. He left and stepped aside from both in order to gratify his spleen, and upon the authorities already cited, we cannot doubt that it was error to hold the appellant responsible.

The first prayer of the appellant ought to have been granted, and the case taken from the jury. It follows, of course, that the plaintiff's prayers were erroneously granted.

*Judgment reversed.*

