# THE BALTIMORE AND OHIO RAILROAD COMPANY AND CHARLES STEINER *vs.* LOUIS DECK.

*Cross-Examination—Harmless Error—Evidence—Master and Servant. Injury to Trespasser Expelled from Railway Train—Instructions.*

Upon the second trial of a case a witness cannot be cross-examined as to testimony given at the first trial when no reference thereto is made upon his examination in chief.

The rejection of admissible evidence at a certain point in the trial is not reversible error when the same evidence is admitted at a later stage.

Plaintiff alleged that he had been wantonly shot by a railway policeman after leaving a train upon which he had been stealing a ride. *Held,* that the defendant railway company is not entitled to ask one of its witnesses, "How often do you get messages, announcing that gentlemen have drawn pistols upon and threatened trainmen?"

The evidence of both plaintiff and defendants was to the effect that plaintifff with certain companions, had been stealing a ride on a freight train and when the train stopped at a certain point one S, a special railway policeman commissioned by the State and employed by the railway company, told the men that they were under arrest and that plaintiff was shot—the evidence being conflicting as to when and by whom the shooting was done. *Held,* that it was error to instruct the jury that the plaintiff is entitled to recover if they find that he was walking near the track of the railway and that S, while acting within the scope of his authority as the company's special officer, attempted to drive trespassers from the train and wantonly fired a pistol towards the plaintiff. There was no evidence in the case that S was at the time plaintiff was shot attempting to drive off trespassers from the train.

*Held,* further, that the question whether S was acting in the scope of his employment by the railway company at the time plaintiff was shot, was a question for the jury.

There is legally sufficient evidence to prove that plaintiff was shot by a certain employee of a railway company when a third person testifies that the employee said to him, just after the shooting, "Yes, if I hadn't shot him I would have kicked his ribs in."

Appeal from the Court of Common Pleas (SHARP, J.), where there was a judgment for the plaintiff for $3,000.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ. ·

*Duncan K. Brent* (with whom was *W. Irvine Cross* on the brief), for the appellants.

*Myer Rosenbush* and *Gustavus A. Korb*, for the appellee.

BURKE, J., delivered the opinion of the Court.

This case is before us for the second time. The first appeal is reported in *100 Md. 168*.

On that appeal the legal principles which should control the case were established, and we do not feel called upon to restate those principles in this opinion, or to reinforce them by reference to other authorities.

In order to prove the case stated in the declaration, the plaintiff, Louis Deck, testified that about 12 o'clock on the night of July 1st, 1899, he and several companions boarded a Baltimore & Ohio freight train, and rode as far as Oella, where they stayed until about 9 o'clock on the night of July the 2nd, 1899, when they boarded another freight train of the Baltimore & Ohio Railroad to return to Baltimore; but when the train reached the point where the plantiff was injured, it slowed down, and that he got off and started to walk; that he had walked a short distance when a shot was fired, and the ball struck him in the back; he afterwards heard other shots, but that the first shot be heard hit him; that while he was lying on the ground a man named Will Thomas came up with a lantern, and Steiner, one of the defendants, came also, and that Steiner asked what was the matter, and that the plaintiff told him he was shot; thereupon Steiner said, "yes, the son of a bitch, if I hadn't shot him, I would have kicked his ribs in;" that he was about fifteen feet from the train when he was shot; that as soon as the ball hit him he dropped right down.

And one of the defendants, Charles Steiner, testified that

he had been in the employ of the defendant company for about twenty years in various capacities, that he was on duty as a special officer for the defendant company, on the night of July 2nd, 1899, and was paid by that company, and received no pay from any other source than from the Baltimore & Ohio Railroad, that his duties as special officer were to protect the company's cars and property, and drive off trespassers from trains, and arrest them, and keep them off the property ; that on the night in question he was at the place of shooting as a policeman of the Baltimore & Ohio Railroad Company to protect its property, and in pursuance of his duty as policemna, commissioned by the State of Maryland for the preservation of law and order.   And that John J. Hoffman, one of Deck's companions on the night in question, testified that when they got near the city limits the train slowed up and Deck got off and said he was going home ; that "before the train stopped altogether some one came up, and *told us to get off there that we were under arrest*, and we were about to get off, and some one fired a shot ; that witness turned in the opposite direction and ran ; that he had no pistol, and as far as he knew his companions had none ; that there was no necessity for firing a revolver, because whoever the man was *he could have arrested us without firing a revolver.*

Herkenhahn, another of Deck's companions, testified that they boarded a freight train of the defendant company at Oella on the night in question to return to Baltimore, and that when the train got to Mt. Clare Junction "some man ordered them off *and said they were under arrest;*" that when the man ordered them off he started to shoot at them, and they got off on the opposite side and ran; that he had no pistol and did no shooting.

The plaintiff also proved by George J. Carlin that several months after the shooting Steiner told him that he had shot Deck, and by Dr. Smith he proved that Deck was seriously and permanently injured.

The defendants offered evidence tending to prove that on July 2nd, 1899, when the freight train of the Baltimore &

Ohio Railroad Company, in charge of Conductor Severn, stopped at Frederick Junction, a station fifty eight miles from Baltimore, two men got off of the train, Deck being one of them ; that as the train started to leave the station, the men got back on the the train, and were ordered off by the conductor ; that one of the men drew a pistol and held it in the face of the conductor, and said, "you son of a bitch if you come up here I will blow your brains out" ; that the men afterwards got off of the train ; that the plaintiff was next seen at Bartholows, a station seven miles from Frederick Junction, and was then standing on the ground along side of a freight train in charge of conductor Willhide; that at Gaithersburg, a station thirty miles from Baltimore, a number of men were found standing on the bumpers of the cars and were ordered off by conductor Willhide ; that the men told the conductor "to move on, or he would be filled full of lead" ; and one of the men pushed the witness Schroeder in the back with a pistol and told him to move on ; that Willhide sent a telegraphic message from Gaithersburg to the railroad authorities in Baltimore that tramps had taken charge of the train and to send relief; that in response to this message Steiner and Higginbotham were sent to the scene of trouble.

They met Willhide's train near Sextonville, and the account given by the defendant's witnesses as to the circumstances attending the shooting differ in many important particulars from that adduced in support of the plaintiff's case.

The defendant's evidence tends to prove that when the officers reached the train upon which the men were riding Higginbotham went to the north side of the train, and Steiner to the south; that Steiner attempted to put the men under arrest, and notified them that they were under arrest, that thereupon they pulled their pistols, jumped from the train to the ground and began to shoot; that they fired a number of shots, and appeared to be shooting at Steiner; that as soon as they ceased shooting, Higginbotham, who was four or five feet from the men, attempted to arrest them, when Deck jumped in front of him, and was shot in the back by one of the men in the crowd;

that the shot which struck Deck was the last one fired; that after being shot Deck staggered across the west-bound track and fell. That immediately afterwards, Steiner came over to where the plaintiff was lying, and asked Higginbotham if he "had got any of them;" that it was at this point that the alleged declaration of Steiner, mentioned in plaintiff's evidence, was made.

There is agreement in the record to the effect that the defendant, Steiner, was an employee of the Baltimore & Ohio Railroad Company on the night the plaintiff was shot, in the capacity of detective, or special officer; that he was on duty as such employee for said company on that night, and that among other duties of said Steiner's employment, it was his duty to drive trespassers off the trains.

These facts, which are the important and controlling ones in the record, are all that need be stated in order to enable us to pass upon the main questions presented upon this appeal.

During the trial four exceptions were taken by the defendants to the ruling of the Court upon questions or evidence. We will first consider these exceptions.

The defendants' counsel, on cross-examination, asked the plaintiff this question: "did you hear him (Thomas) in that case, at that trial, he being your own witness, testify that Steiner had not said, "if I hadn't shot the son of a bitch I would have kicked his ribs in." The Court refused to allow this question to be answered. This constitutes the defendants' first exception. The witness had made no mention of Thomas, or the testimony in the former trial, in his examination in chief, and we see no reason why the defendants should have been permitted to cross-examine him as to what had been testified to by another witness in the former case.

Thomas was present in Court, and was afterwards called as a witness both for the plaintiff and defendants, and testified to the facts sought to be elicited by the question to which the plaintiff's counsel had objected.

The defendants' second exception was abandoned. The defendants' third exception was taken to the refusal of the Court

to allow the counsel for defendants to ask the witness, Steiner, on cross-examination, if he had not been called to the scene of the trouble, because of the notification of riotous and disorderly proceedings.

If it be assumed that the trial Court erred in this respect, it does not appear that the defendants were injured thereby as the witness, Steiner; and others, at a later stage of the trial, testified fully as to the exact circumstances under which Steiner was called to the relief of conductor Willhide.

The defendants' counsel proposed to ask the witness, Andre, the following question: "How often do you get messages announcing that gentlemen have drawn pistols upon and threaten trainmen;" the Court refused to allow the question to be answered, and this constitutes the defendants' fourth exception. : We are unable to see how the answer to this question could be material, or relevant to the issues involved. We therefore find no reversible errors in the rulings of the lower Court upon questions of evidence.

. The defendants' fifth exception presents for consideration the ruling of the Court upon the prayers, and upon the special exceptions interposed by the defendants to the granting of the plaintiff's prayers.

By the first prayer of the plaintiff, which was granted, the jury were instructed that if they find that the plaintiff was walking on or near the tracks of the defendant company on or about the night of July 2nd, 1899, as testified to, and if they further find that the defendant, Steiner, was in the employ of said defendant body corporate, as a detective or special officer, and that while said Steiner was acting within the scope of his authority and in the course of his employment, if the jury shall so find, *said Steiner attempted or was in the act of driving trespassers from a train belonging to the defendant body corporate*, said Steiner recklessly and wantonly fired a pistol toward the plaintiff, then their verdict must be for the plaintiff.

To the granting of this prayer two special exceptions were filed, one by the defendants jointly, and one by the Baltimore & Ohio Railroad Company, both of which were overruled.

The first exception asserted that there had been "no evidence offered legally sufficient to show either that Steiner attempted or was in the act of driving off trespassers from a train belonging to the defendant body corporate, or that said Steiner recklessly or wantonly fired a pistol towards the plaintiff.

The other exception is to both prayers of the plaintiff, and asserts that "there is no evidence in the case legally sufficient to show as against the Baltimore & Ohio Railroad Company that the shot by which Deck was hurt was fired by defendant, Steiner."

We are not able to find in this record any evidence to support the hypothesis that on the occasion when the plaintiff was injured, Steiner attempted or was in the act of driving trespassers from a train of the defendant company.

In this respect the case is widely different from the one presented on the former appeal of *Deck* v. *The Baltimore & Ohio Railroad Company*. In that case the defendants showed that Steiner was simply driving trespassers from the train; in this case it appears by every witness, both for the plaintiff and for the defendants, who has spoken upon the subject that Steiner was in the act of arresting the men on the train for a breach of the criminal law of the State at the time the plaintiff was injured.

By the plaintiff's own evidence it appears that he and his companions were guilty of a criminal act, and if the testimony of the defendants' witnesses be true they were a band of reckless and desperate law breakers.

Steiner was a State officer, appointed by the Governor under the law, and held a commission from the State. He was also an employee of the defendant company, but whether he was acting as an employee of the company at the time the injury was inflicted, or as a commissioned officer of the State in the exercise of the powers of his office in attempting to arrest, without warrant, the men on the train who were confessedly violators of the criminal law of the State, were questions which should have been submitted to the decision of the jury.

From what we have said it is manifest that the prayer clearly

misstated the real act and purpose of Steiner as shown by the evidence.    The legal consequence which would follow from his acts done solely in one capacity would be quite different from that which would result from acts done in the other.

We are, therefore, of opinion that the Court committed an error in granting the plaintiff's first prayer, because there was no evidence in the case legally sufficient to support the hypothesis that Steiner at the time the injury was inflicted was attempting or was in the act of driving off trespassers from the defendant company's train.

We find no error in granting the plaintiff's second prayer. It is one that has been repeatedly approved by this Court, and under the facts, as declared by the record, is free from objection.

The first prayer of the Baltimore & Ohio Railroad Company was properly refused.    The admissibility of the alleged declaration of Steiner, stated in the prayer, to bind the railroad company was considered and passed upon by this Court on the former appeal.

The Court in considering the prayer of the railroad company, granted by the Court below at the conclusion of the plaintiff's case by which the jury was directed to find their verdict for the defendant company, FOWLER, J., in delivering the opinion in that case propounds this question: "Was there any evidence in the case legally sufficient to prove that the defendant, Steiner, did the shooting complained of?"

He was then inquiring whether or not there was any evidence legally sufficient to be submitted to the jury to show as against the Baltimore & Ohio Railroad Company, that Steiner did the shooting.

In answer to that question the Court distinctly decided that the evidence of the plaintiff that Steiner said, in the presence of Thomas, after the plaintiff was shot, and while he was lying upon the ground, "yes, if I hadn't shot the son of a bitch I would have kicked his ribs in," was evidence to be considered by the jury against the defendant company that Steiner had shot the plaintiff.

There was no error in refusing the defendants third prayer, because the question whether Steiner was acting in the scope of his employment as an employee of the Baltimore & Ohio Railroad Company at the time the plaintiff was shot, was a question for the jury to pass upon under all the facts and circumstances of the case.

For error in granting the plaintiff's first prayer the judgment must be reversed.

> *Jndgment reversed, and new trial awarded with costs to the appellants.*

(Decided January 9th, 1906.)