# THE BALTIMORE, CHESAPEAKE & ATLANTIC RAILWAY COMPANY *vs.* THOMAS H. TWILLEY.

*False Arrest of Passenger.—Question Whether Arrest was Made by One as Employee of the Defendant or as Peace Officer for the Jury.— Evidence.*

In an action by a passenger against a railway company for assault and false imprisonment by its agent, the plaintiff's evidence tended to show that the arrest was made wholly without cause, while the defendant's evidence was to the effect that the plaintiff was disorderly and interfered with an officer in the discharge of his duty.  *Held,* that the jury was fully and properly instructed as to the plaintiff's right to recover in case they should find the evidence of either party to be true.

Plaintiff, a passenger on defendant's railway, was arrested by a person who was an employee of the defendant, and who, at defendant's request, had been appointed a special police officer of a town to act as such on an excursion train.  In an action for false arrest, *held*, that the question whether the person who made the arrest was acting at that time as an employee of the defendant, within the scope of his employment, or as a peace officer of the town, was for the determination of the jury.

*Held*, further, that the evidence in the case is legally sufficient to authorize the jury to find that the person making the arrest was the defendant's agent, and was acting at the time within the scope of his employment.

In an action of false arrest, the defendant objected to plaintiff's evidence, which was admitted, to show that the Justice of the Peace before whom he had been brought discharged him.  Subsequently, the defendant offered in evidence the docket entries of the Justice of the Peace, by which it appeared that the plaintiff had pleaded guilty and had been fined.  *Held,* that the objection to the admissibility of plaintiff's evidence cannot be sustained on appeal, because at the time it was admitted, the docket entries, which it was alleged to contradict, were not before the Court, and because the proof in the case shows that the plaintiff was not arrested for the offence mentioned in the docket entries.

*Decided June 26th, 1907.*

Appeal from the Court of Common Pleas, (HARLAN, C. J.) where there was a judgment for the plaintiff for $500.

The cause was argued before BRISCOE, BOYD, SCHMUCKER; BURKE, and ROGERS, JJ.

*Edward Duffy* (with whom were *Bond & Robinson* on the brief), for the appellant.

*German H. H. Emory* (with whom were *Miles & Morris* on the brief), for the appellee.      :

BURKE, J., delivered the opinion of the Court.

This is action for assault, false arrest and imprisonment, brought by Thomas H. Twilley against the Baltimore, Chesapeake and Atlantic Railway Company. The defendant is a corporation and a common carrier of passengers between the town of Hurlock and Ocean City in the State of Maryland. On the afternoon of July 21st, 1905, the plaintiff was a passenger on the cars of the defendant company on his way from Ocean City to his home in Cambridge, Dorchester County. The train stopped at Salisbury in Wicomico County. The plaintiff alighted from the train, and while upon the premises of the defendant, and whilst in the act of boarding the train to continue his journey to his home, was arrested by William W. White, a special officer, who delivered him to Josiah C. Kelly, a constable of Wicomico County, and was imprisoned in the jail in that county until the morning of the 22nd of July, 1905, when he was released. The trial resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

The declaration contains three counts. The first charges that the defendant, on or about the 21st day of July, 1905, at or near the town of Salisbury, in Wicomico County, State of Maryland, by its agents, officers, and employees, while acting in the scope of their employment, recklessly, wantonly, and negligently, assaulted and beat the plaintiff, and arrested the plaintiff who was then and there a passenger on the cars of the said defendant corporation, and gave him into the custody of a constable, and caused him to be imprisoned in the County Jail of Wicomico County; and the second count alleges that at the time and place stated in the first count, and while the plaintiff was a passenger on the defendant's cars, he was wrongfully and negligently ejected from said cars by the agents,

B., O. & A. RY. CO. vs. TWILLEY. 447

Md.] Opinion of the Court.

officers and employees of the defendant. The third count avers that the defendant, while the plaintiff was a passenger on its cars did knowingly, wrongfully and negligently permit the plaintiff to be wilfully and wrongfully ejected therefrom.

It was not denied, and, indeed, could not well be, that the plaintiff was a passenger of the defendant corporation at the time of the assault and arrest set forth in the declaration. The relation of passenger and carrier being shown to have existed at that time, the rules of law by which the responsibility of the defendant for the acts complained of is to be determined have been definitely and clearly stated in a number of decisions in this Court, among which are the cases of the *Baltimore and Ohio Railroad Company* v. *Cain*, 81 Md. 87, and *Tolchester Company* v. *Scharnagle*, 105 Md. 199. If there be found in the record evidence legally sufficient to show that William W. White assaulted and arrested the plaintiff, and that he was at that time an employee of the defendant, and was acting within the scope of his duty as such employee, the Court committed no error in submitting the case to the jury under the instructions granted. Upon that assumption, those instructions clearly and correctly submitted the whole case fairly to the jury.

There was no objection to the legal propositions asserted in the plaintiff's prayers, but it was contended that his first and second prayers should not have been granted for the reasons stated in the special exceptions filed thereto by the defendant, viz., that there was no evidence that White was at the time of the arrest an employee of the defendant company, and that he was acting as an employee of the defendant company within the scope of his authority.

Before considering the evidence bearing upon these questions, which are the most important ones presented on the record, we will examine briefly some of the other more material portions of the testimony. The plaintiff testified that at the time of the injuries complained of he resided at Cambridge, Maryland, and that on July 21st, 1905, he purchased a ticket from Cambridge to Ocean City and return, good for

one day; that he left Ocean City on his return home about five o'clock in the afternoon of that day; that his wife was with him, and that he had remained with her the greater part of the day; that on his return trip there was a man on the train who was acting in a disorderly manner; that he called the attention of Mr. White, the police officer on the train, to the man's misbehaviour, and that White, at the request of a lady passenger, arrested the man, and removed him to the rear part of the car; that witness asked the officer what he was going to do with the man, whose name was Manning, and White said that there would be officers at Salisbury to meet him; that he asked White if Manning could not be taken to Cambridge, as he and the other witnesses were strangers at Salisbury; that White told him that he might see the officers at Salisbury, and see what they would say about it; that when the trained arrived at Salisbury White took Manning off, and that witness and several others got off, and that when witness got on the platform he asked the officer if he would allow Manning to be carried to Cambridge, and that White, who was the police officer on the train and the one who had arrested Manning, told witness it was no concern of his, and to get back on the train. He then testified that he started back, and had reached the second step of the car when he was pulled off by White, who took him by the arm, pulled him off, and handed him over to a constable by the name of Kelly; that Kelly took him to jail, and that he and his wife spent the night in jail, as he had no money to secure lodging elsewhere for his wife; that he was discharged the following day, and left Salisbury on the afternoon of the day of his release, and reached home at eight o'clock that evening. He further testified that he was not under the influence of liquor; that he had no disturbance with any one on the train, or with any officer of the company, and was conducting himself in a proper manner. This testimony of the plaintiff as to his proper and orderly behavior was corroborated by Mrs. Twilley, Arthur G. Jackson, and Leroy Vane. Mr. Vane testified that after Twilley had gotten off the car at Salisbury he heard

an officer say to Twilley, you had better get on the car; that the plaintiff started to get on the train, and had gotten on the second step, when White grabbed him by the arm and pulled him off the car; that he did not see the plaintiff do anything unusual on the platform; did not hear any disorder on the platform, heard no cursing or swearing, and there was nothing in the plaintiff's conduct to indicate that he was under the influence of liquor.

Testimony was produced on behalf of the defendant that the plaintiff was drunk and disorderly on the train; and that at Salisbury he interfered with the officers when they were about to take Manning to jail; that he was drunk at the station in Salisbury; was cursing and disturbing the peace, and was arrested by White for cursing him, and interfering with the other officers in the discharge of their duty.

It was the duty of the Court to have submitted this conflicting evidence as to the condition and behavior of Twilley to the jury, with directions as to its legal effect upon his right to recover, in case they should find the testimony of the defendant to be true. This was done by the first and second instructions granted on the part of the plaintiff, and by the first, third, fourth, and fifth granted prayers of the defendant, which expressly told the jury that they must find for the defendant, if they believed the testimony we have referred to as to the plaintiff's misconduct and intoxication. These instructions put the defense upon this ground as clearly and strongly to the jury as it had a right to expect, and this Court has no power to review the jury's finding upon those questions.

2. The questions raised by the defendant's special exceptions to the plaintiff's first and second prayers will now be considered. William White, who arrested the plaintiff, was a machinist in the employ of the defendant corporation, and had been working for it about four years, and on the afternoon or night of July 20th, 1905, at the request of Mr. Benjamin, the superintendent of the defendant company, was appointed by the Mayor of Salisbury as a special police officer, and was acting as such police officer on the defendant's excursion train from Cam-

brdge, Dorchester County, to Ocean City, in Worcester County, on the day of the plaintiff's arrest.　While thus employed, he was paid his usual wages as a machinist by the railroad company.　He was appointed for twenty-four hours only.　While the testimony shows he qualified as a special officer before a Magistrate of Salisbury, no commission was produced at the trial, and it is doubtful if one was issued.　He testified that the Mayor of the town had the matter of his commission fixed up with Mr. Benjamin, who gave him orders to go to Mr. Trader, and be sworn by him, and that he understood that he was to act as a police officer for the town if it needed him, *or for the defendant company, if it needed him.*　He did assume to act as a special officer on the defendant's train on the day in question outside of the limit of the town of Salisbury.

In the light of such facts the jury might reasonably conclude that White was an employee of the company, and under its direction and control at the time he arrested the plaintiff, and was acting in the performance of the duty for which the defendant had procured his appointment.　We think the jury might have reasonably inferred that White was really the servant and agent of the defendant, appointed for its own special benefit and advantage, and was acting within the scope of his employment as such employee at the time he arrested the plaintiff, although he had been previously appointed a special officer for the town of Salisbury.　The capacity in which he was then acting, whether as an employee of the company, or as a commissioned officer of the town of Salisbury in the exercise of his powers as such officer, or whether he was acting within the scope of his duty as such employee, were questions, under all the circumstances of the case, proper to be submitted to the jury.　*Consolidated Railway Company* v. *Pearce*, 89 Md. 495; *Deck* v. *Baltimore and Ohio Railroad Company*, 100 Md. 185.

The defendant's second prayer asserted that there was no evidence in the case from which she jury could find that the defendant failed to perform all duties owed by it to the plaintiff.　It follows from what we have said that there was no error

in refusing this prayer.   The amendment made by the Court
to the defendant's sixth prayer was proper.   That amendment
consisted of the insertion of the following words, "and not as
the employee of the defendant acting within the scope of his
employment."   Without this modification the prayer would
have been well calculated to have misled the jury.

Nine exceptions were taken by the defendant to the rulings
on questions on evidence.   The testimony embraced in eight
of these exceptions we think was properly admitted, although
some of it was not important, and, upon the whole case, even
if improperly admitted, we could not say its admission consti-
tuted reversible error.   The fifth and seventh exceptions are
the only ones which seem to be of importance.   The defendant
offered as a part of its evidence, the docket of William A.
Trader, the police justice of Salisbury, which read as follows:
"State of Maryland against T. W. Twilley.   July 22nd, 1905.
Charged with being drunk and disorderly on B. C. & A. Train
from Ocean City to Salisbury.   Writ issued to J. C. Kelly,
Constable.    Return, *cepi.*    Defendant appears and pleads
guilty, and fined $5 and costs, costs $2.75.   Fine and costs
paid, and defendant discharged."   The plaintiff had introduced
testimony to show what had taken place at the magistrate's
office on the morning of July 22nd, 1905, and this evidence
which was admitted over the objections of the defendant, con-
stitutes the fifth and seventh bills of exceptions.   It is argued
that this evidence was not admissible for the reason that it
contradicted a judicial record, to wit, the docket-entries of the
Justice of the Peace which we have quoted.   To this objection
there is a two-fold answer, first, at the time the testimony was
admitted there was no such record before the Court, and there
is nothing to indicate that the Court knew of its existence;
and, secondly, the proof shows that the plaintiff was not
arrested at the station in Salisbury for the offense mentioned
in the docket entries.   The magistrate's docket shows that the
plaintiff pleaded guilty to the charge of "being drunk and dis-
orderly on B. C. & A. Train from Ocean City to Salisbury."
He was arrested in Salisbury for cursing Kelley and interfer-

ing with the other officers, according to the testimony of Kelly.

After a careful consideration of the record, we fail to find any error in the rulings of the lower·Court and the judgment will, therefore, be affirmed.

> *Judgment affirmed with costs to the appellee above and below.*