KIMMEL, Trustee, Etc. *v.* W. T. GRANT
COMPANY

[No. 186, September Term, 1963.]

*Decided February 5, 1964.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Marbury and Sybert, JJ.

*James R. Miller, Jr.,* with whom were *Earl C. Hill, Jr.,* and *Miller, Miller & Canby* on the brief, for the appellant.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simpson, H. Algire McFaul* and *Simpson & Simpson* on the brief, for the appellee.

Hammond, J., delivered the opinion of the Court.

In this case a landlord, the appellant, and a tenant, the appellee, interpreted differently a written lease of a store; the landlord thought the lease contemplated the payment of additional rent if the tenant began to use any part of the basement of the building, the first floor of which it had occupied for several years, and the tenant read the instrument as providing it had the right to use the basement without paying additional rent provided it made any necessary improvements or readiments at its own expense.

The tenant began to use space in the basement and refused to pay additional rent, and the landlord sought a declaration at law that such rent was payable. Incorporated by reference in the pleading of the plaintiff were the lease and copies of let-

ters of the tenant indicating an original willingness to pay additional rent for use of space in the basement if the landlord did certain work and a subsequent change of heart. It was alleged that without further notice the tenant had installed the partitions in the basement (and, it would appear, a stairway from the first floor) at its expense and was using twenty-five hundred square feet thereof as a stockroom. Judge Shure sustained the tenant's demurrer without leave to amend, finding the lease unambiguous and plain in its meaning that the tenant had the right to occupy space in the basement without paying additional rent provided the landlord was not called on to pay for improving or making ready the space occupied.

The well-pleaded allegations of fact in the declaration of the landlord, admitted by the demurrer to be taken as true, show that in 1956 Kimmel, trustee, as landlord, and W. T. Grant Company, as tenant, executed a fifteen-year lease of land and a building to be erected by the landlord in a shopping center in Montgomery County. It was contemplated that the tenant would originally occupy and use only the ground floor of the one-story and basement building and that the basement would not be finished until such later time as the needs of the tenant required its use. Because it was economical to do so the landlord, at considerable expense, caused the basement to be partially finished while the original construction was in progress, by the installation of a concrete floor, a plastered ceiling and electrical wiring. The floor area of the first floor and of the basement was to be twenty-one thousand square feet each and the fixed rental to be paid from the time the first floor was opened as a store or sixty days after the tenant was given exclusive possession of the first floor was to be $18,000 a year (or 85.7 cents per annum a square foot). The lease provided that if the landlord, at the tenant's request, thereafter made the basement ready for occupancy, the additional rent would be at the rate of 85 cents a square foot per annum for space which the tenant occupied. The lease also called for a percentage rent of 3% of sales over $600,000, with an adjustment in the minimum sale bases if additional fixed rent became payable.

The tenant relies, as did the trial court, largely on a provision of the lease that "the Tenant at its own expense may from

time to time during the term of the lease make any alterations, additions and improvements in, on and to the demised premises which it may deem necessary or desirable * * *." The landlord says that this standard printed provision at the very least makes the lease ambiguous and that it must yield to the special and explicit subsequent typewritten provisions that the tenant may "require the Landlord to do such work as is necessary to finish the basement in Tenant's store so that the same may be used by the Tenant as a stock, sales and/or office area" and that if this is done "then, effective sixty (60) days after the Landlord has delivered possession of the additional space to the Tenant * * * the annual fixed rent * * * namely EIGHTEEN THOUSAND DOLLARS ($18,000), shall be increased by the amount which is the product of the number of net square feet of additional space provided by the Landlord * * *."

The answers to the questions posed would seem to come clear if it can be determined what were the demised premises which the tenant could alter, add to, or improve at its own expense. To get these answers the lease must be read as a whole giving due consideration and weight to all its provisions relevant to the inquiry. If we can, we must ascertain what meaning would be attached to the integration as a whole by a reasonably intelligent person acquainted with both the operative usages and the circumstances prior to and contemporaneous with the making of the integration other than the oral statements of the parties of what they intended it to mean. *Weber v. Crown, etc. Corp.*, 214 Md. 115.

The integration was in two parts: a lease which, "upon and subject to covenants and agreements set forth in a certain agreement between the Landlord and the Tenant * * * (hereinafter called 'Lease Agreement')" conveyed two parcels in the Rockville Center Shopping Center, "(hereinafter called the 'demised premises') and more particularly described as * * * 'Parcel No. I—all that certain parcel of land * * * together with a one (1) story and basement air-conditioned building to be erected by the landlord thereon in accordance with the provisions of said Lease Agreement. Parcel No. II—Together with the right, privilege and easement to use those portions of said Shopping Center which are crosshatched in red on said Ex-

hibit 'A' * * * exclusively for the parking of automobiles * * * of the Tenant and of persons trading or doing business in Parcel No. I of the demised premises * * *."

The lease agreement consisted of thirty-three numbered paragraphs or sections. It recited the making of the lease and provided in Section 1 that "this instrument is the agreement so referred to in the lease and is made to supplement and complete such lease and is to be deemed a material part thereof for all purposes and to the same extent as if actually set forth therein."

Section 2 of the lease agreement says that the landlord shall deliver to the tenant at a time specified "actual and exclusive possession of the demised premises with the improvements erected thereon in accordance with Section 20 hereof." Section 20 a provides that the landlord shall construct a new one-story and basement air-conditioned building having a ground floor and a basement floor, each with dimensions of 140 by 150 feet and to contain some twenty-one thousand square feet, with "the basement to be completed pursuant to the terms and conditions of Section 27 hereof."

Section 27 spelled out the procedures to be followed if the basement was to be prepared for the tenant's use. If the tenant so desired, it could at any time during the term by written notice require the landlord "to do such work as is necessary to finish the basement in Tenant's store so that the same may be used by the Tenant as a stock, sales and/or office area." In addition, the landlord was required at his expense to make such alterations to "the then existing premises" as the tenant may require, including all necessary stairways, entrances, exits, electrical wiring, flooring, plumbing, heating, interior finish and air-conditioning "at least equal in character to similar work done by the Landlord on the demised premises."

Provision is made for the furnishing by the tenant of outline plans of the work it desires done and for the landlord to supply working drawings and specifications to the tenant. If the landlord fails to do this or fails promptly to start or diligently to finish the work, the tenant may "perform or complete the work mentioned in this Section 27 and deduct the entire

cost thereof together with interest at six per cent (6%) per annum, from any rents becoming due hereunder."

Section 4 (a) reads: "The Tenant shall pay a fixed rent to the Landlord at the annual rate of Eighteen Thousand Dollars ($18,000) payable in equal monthly installments * * *. The rent * * * shall commence to accrue on the day the Tenant opens its store on the demised premises to the general public for business or sixty (60) days after the date exclusive possession of such premises shall have been delivered to the Tenant as required under Section 2 hereof, whichever shall be earlier." Section 2 requires delivery of exclusive possession to the tenant "in accordance with Section 20 hereof." Section 20 provides for the building of the one-story and basement store building with the limitation as to the future completion of the basement.

Section 28, headed "Rent Adjustment after Expansion," says that if the tenant "exercises its option set forth in Subparagraph (a) of Section 27 hereof" and the landlord performs his covenants and agreements in connection with the construction "then, effective sixty (60) days after the Landlord has delivered possession of the additional space to the Tenant in accordance with the requirements of Section 27 hereof, the annual fixed rent payable pursuant to the provisions of Section 4 (a) hereof, namely EIGHTEEN THOUSAND DOLLARS ($18,000), shall be increased by the amount which is the product of the number of net square feet of additional space provided by the Landlord in accordance with Section 27 hereof, multiplied by eighty-five cents ($.85) * * *."

We think the plan and provisions of the lease and lease agreement make it plain that the tenant was entitled originally to occupy only the first floor area of the building on Parcel No. I of the demised premises in return for the fixed annual rental of $18,000 a year (and the percentage rent) specified by Section 4 and that if the tenant desired to use space in the basement it must invoke the provisions of Section 27 and thereafter pay for the space it uses the additional fixed annual rental of eighty-five cents a square foot (and the percentage rent) called for by Section 28.

The right given the tenant by Section 6 (a) to make alterations, additions and improvements "in, on and to the demised

premises" as it desires and at its own expense does not conflict with or vary the plain meaning of the integration which is the lease and lease agreement taken together, as we read that integration. Manifestly, from the extracts which have been quoted or referred to, the term "demised premises" sometimes is used to mean one thing in one context and a different thing in another. Nevertheless, as far as the building which the landlord was to erect (and did erect) on Parcel No. I is concerned, the term "demised premises" is always used so as to include in its meaning the completed area (the ground floor) of which exclusive possession was to be delivered initially (as spelled out, for example, in Section 20 (c)) and for which the fixed annual rent (and the percentage rent) was called for by Section 4, and not the basement area. The basement area was thought of and dealt with in futuro. It was contemplated and specified (by Section 20 (a)) "to be completed pursuant to the terms and conditions of Section 27." Section 27 speaks of the work necessary "to finish the basement in Tenant's store so that the same may be used by the Tenant" and by way of contrast refers to additional work to "the then existing premises" which is to be equal in character to similar work previously "done by the Landlord on the demised premises."

By the execution of the integration two rights were then granted by the landlord to the tenant. One was a present demise of premises, which included the first floor area of the store building, and the other the right subsequently to call for the demise of the basement area, which might be called a potential or optional demise.

To find the true meaning of the words of Section 6 it must be considered as part of the whole integration. So read, the right it gives the tenant to make alterations and additions to the demised premises is a right to be exercised only as to premises presently demised—that is, premises occupied and used by virtue of the integration and for which rent is being paid under it, at the time the alterations or additions are begun and not as to premises then only potentially demised. It gives a right to do work on premises of which the tenant is the then leasehold owner, not on premises which it has the option to lease thereafter. In context Section 6 harmonizes sensibly

and reasonably with the meaning which a reasonably intelligent person who knew both the operative usages and the attendant circumstances would attach to the integration as a whole.

The landlord is entitled to a declaration that the tenant must pay rent for the basement space it has occupied as provided in Section 28, with such credit for the cost of the improvements it made to the basement as Section 27 affords it under the circumstances.

> *Judgment for the appellee for costs reversed, with costs; order sustaining the appellee's demurrer reversed and case remanded for further proceedings not inconsistent with the opinion herein.*