## ST. MICHELLE *v.* CATANIA T/A DIAMOND CAB COMPANY

[No. 115, September Term, 1968.]

*Decided March 11, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*Michael J. Milton,* with whom was *Sheldon H. Braiterman* on the brief, for appellant.

*Wilbur D. Preston,* with whom was *William B. Whiteford* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case comes to us on appeal from an order sustaining, without leave to amend, Mrs. Catania's demurrer to the first count of Miss St. Michelle's declaration and entering judgment absolute for costs in favor of Mrs. Catania as to the first count of the St. Michelle declaration.[1]

The declaration contained the following allegation of "facts common to all counts":

> " FOR THAT Defendant [Catania] owns and op-erates as a business a fleet of taxicabs. On February 5, 1966, in the City of Baltimore, Plaintiff [St. Mi-chelle] hailed and entered one such taxicab, known as Diamond Cab No. 778, for the purpose of riding there-in as a fare-paying passenger. Said Diamond Cab No.

---

1. The lower court entered an order expressly determining that there was no just reason for delay and directing the entry of final judgment for Catania as to the first of three claims for relief set out in the declaration, as permitted by Maryland Rule 605. This made possible an immediate appeal.

778 was then and there being driven by one Ernest Jones, as agent or servant of the Defendant, in the course of Defendant's business. One George Foster was riding in the front seat of said taxicab. Plaintiff told Jones to take her to the New Howard Hotel. Jones agreed and thereupon commenced the execution of a contract of carriage between Plaintiff and Defendant. The taxicab proceeded toward said destination, and when it was near a restaurant a short distance from said destination, Plaintiff asked to be let off. Jones did not obey this instruction, but caused and permitted Foster to throw Plaintiff to the floor of the cab and forcibly prevent her from leaving the cab. Thereupon Jones continued driving the cab and thereafter Jones and Foster, acting in concert, assaulted and beat Plaintiff and forcibly robbed Plaintiff of money and valuable personal property. Foster and Jones raped Plaintiff in the taxicab, a total of five such acts occurring, each accomplished by means of violence and threats of death and/or great bodily injury. Plaintiff was kidnapped and forcibly confined to the taxicab for a period of approximately three hours, in the course of which the aforesaid acts took place, and thereafter was released at a point about ten blocks from her destination in Baltimore City.

"Plaintiff was generally injured and damaged by the aforesaid acts of assault, battery, rape, robbery, kidnapping, and confinement. Plaintiff suffered painful bodily injury, and required medical treatment and incurred expense therefor. Plaintiff underwent extreme mental anguish, fear, shame, and humiliation, and will continue to endure great mental anguish for the rest of her life. Plaintiff incurred loss of valuable personal property, and was otherwise injured and damaged. All of the injuries and damages of which Plaintiff complains resulted directly from the aforesaid acts."

It was the first count of the declaration:

"The aforesaid acts were in breach of Defendant's

duties to provide Plaintiff with safe carriage, and to protect Plaintiff from misconduct of Defendant's own servant engaged in the execution of Defendant's contract of carriage with Plaintiff."

to which Mrs. Catania demurred on the grounds:

"1. Because the First [count is] bad in law and insufficient in substance.

"2. Because on the basis of the facts the driver of the taxicab which it is alleged was owned by the Defendant was acting out of the scope of his employment at the time of the occurrence.

"3. Because on the basis of the Plaintiff's allegations the violation of the alleged contract of safe carriage was committed by Jones at a time when he was acting out of the scope of his employment with the Defendant."

A demurrer admits the truth of allegations of facts which are well pleaded, including the inferences reasonably to be drawn from them. *Kimmel v. W. T. Grant Co.,* 233 Md. 466, 197 A. 2d 122 (1964); *Brack v. Evans,* 230 Md. 548, 187 A. 2d 880 (1963); *Garonzik v. Balto. Fed. Savings & Loan Ass'n,* 225 Md. 322, 170 A. 2d 219 (1961); *Hillyard v. Chevy Chase Village,* 215 Md. 243, 137 A. 2d 555 (1958).

The only question before the lower court and before us is whether the facts alleged in the St. Michelle declaration, if true, would set out a cause of action against Mrs. Catania.

Mrs. Catania argues that Maryland has always applied the doctrine of *respondeat superior* to cases involving assaults on passengers by the employees or agents of a common carrier, and has relieved the carrier from reponsibility for assaults committed by employees who were acting outside the scope of their employment, citing 4 Maryland Law Encyclopedia, *Carriers* § 45 (1960) at 428 and an annotation "Employer's Liability for Assaults by Taxicab or Motor Bus Driver" 53 A.L.R.2d 720 (1957), and relying on *Smith v. Balto. Transit Co.,* 214 Md. 560, 136 A. 2d 386 (1957) and *Smith v. Balto. Transit Co.,* 211 Md. 529, 128 A. 2d 413 (1957) as authority for the propo-

sition that a common carrier is not an insurer of its passengers.

Miss St. Michelle, on the other hand, argues that a common carrier can be held liable to a passenger who is assaulted by an employee of the carrier before the contract of transportation has been completely executed, irrespective of whether the employee was acting without the scope of his employment. While the decisions of this Court have not been entirely consistent, the well-reasoned cases and the weight of modern authority support Miss St. Michelle's contention.

A taxicab is a common carrier. Maryland Code (1957, 1965 Repl. Vol.) Art. 78, §§ 45-50K; *Brooks v. Sun Cab Co.,* 208 Md. 236, 117 A. 2d 554 (1955). A common carrier is not an insurer of the safety of its passengers, but is bound to employ the highest degree of care for their safety, consistent with the nature of the undertaking. It owes its passengers a duty to deliver them to their destination as expeditiously as possible, consistent with safety. *Ragonese v. Hilferty,* 231 Md. 520, 526, 191 A. 2d 422 (1963); *Retkowsky v. Balto. Transit Co.,* 222 Md. 433, 440, 160 A. 2d 791 (1960); *Smith v. Balto. Transit Co., supra,* 214 Md. at 568; *Smith v. Balto. Transit Co., supra,* 211 Md. at 537. *Compare Pugh v. Washington Ry. & Elec. Co.,* 138 Md. 226, 113 A. 732 (1921).

Some of our prior decisions in this area have turned on the question of whether the assault on the passenger occurred before or after the contract for safe carriage had ended.[2] For example, in *Central Ry. Co. v. Peacock,* 69 Md. 257, 14 A. 709 (1888), the carrier was held not to be liable for an assault by its driver on a passenger who had alighted from a streetcar to report the driver for misconduct.

---

**2.** Other cases holding that where the offending employee occupied a dual capacity, *i.e.,* an employee of the carrier who was also a private policeman or peace officer, the determination of which role he was assuming being for the jury, are not germane to the issue before us. *See Balto., C. & A. Ry. Co. v. Ennalls,* 108 Md. 75, 69 A. 638 (1908); *Balto., C. & A. Ry. Co. v. Twilley,* 106 Md. 445, 67 A. 265 (1907); *Tolchester Beach Imp. Co. v. Scharnagl,* 105 Md. 199, 65 A. 916 (1907); *Balto. & Ohio R.R. Co. v. Deck,* 102 Md. 669, 62 A. 958 (1906); *Deck v. Balto. & Ohio R.R. Co.,* 100 Md. 168, 59 A. 650 (1905); *Tolchester Beach Imp. Co. v. Steinmeier,* 72 Md. 313, 20 A. 188 (1890).

In denying liability, this Court cited *New Jersey Steamboat Co. v. Brockett,* 121 U. S. 637 (1887) as authority for the proposition that a carrier must protect his passengers from the violence of the carrier's employees and from that of other passengers but added that to bring a case within the operation of the *Brockett* rule, it must appear that the claimant was a passenger, and that the employee was executing the contract of transportation at the time of the assault.

The Court then concluded:

> "* * * The carrier had a right to regard [Plaintiff's] contemplated trip as ended, and contract executed. He was no longer being carried as a passenger but was walking on the street. * * * True, he had been insulted in the car but was not assaulted in the car. * * * [The driver] actually stopped his team, and left it in the street with his passengers unguarded, in order that he might pursue his victim and knock him down. In doing this he cannot be regarded as acting within the sphere of his duty or scope of his authority." 69 Md. at 264-65.

*Balto. & Ohio R.R. Co. v. Barger,* 80 Md. 23, 30 A. 560 (1894), which held the railroad answerable to a passenger who had been assaulted on the train by a conductor, amplified the holding in *Peacock*:

> "* * * If [the conductor] has the opportunity to prevent an assault on a passenger in his charge it is his duty to do so, and his failure to make a reasonable effort to protect the passenger from such assault, would make the company responsible. If that be a correct statement of the law, as it undoubtedly is, as settled by *Steamboat Co. v. Brockett,* 121 U. S. 645, and numerous other authorities, then *a fortiori,* the company must be liable if the conductor makes an assault on one who is still a passenger as Barger was." 80 Md. 23 at 31.

In *Rosenkovitz v. United Rys. & Electric Co.,* 108 Md. 306, 70 A. 108 (1908), plaintiff was a newsboy, either a trespasser

or an intended passenger according to the opposing contentions, and was ejected from the streetcar. The Court held:

> "There can be no reasonable dispute as to the law applicable to a case of this character upon either theory as herein stated. If the assault was made and the plaintiff was ejected whilst a passenger, and whilst the conductor was in its employ, executing 'the contract of transportation' (provided the jury found these facts), the company would clearly be responsible." 108 Md. 306 at 313.

The existence of a contract of transportation as the element which determines liability is the modern view. 14 Am.Jur.2d *Carriers* § 908 (1964) at 340.

We conclude that under the Maryland cases involving a carrier's liability to its passengers, the crucial test should be whether the assault occurred before the contract of transportation or of safe carriage had ended, *New York, P. & N. R.R. Co. v. Waldron*, 116 Md. 441, 82 A. 709 (1911), and that concepts of "scope of employment" or "line of duty", although relied upon in some cases, simply provide an additional base for the grounding of liability, *see*, for example, *Dennis v. Balto. Transit Co.*, 189 Md. 610, 56 A. 2d 813 (1948); *Philadelphia, B. & W. R.R. Co. v. Crawford*, 112 Md. 508, 77 A. 278 (1910); *Philadelphia, B. & W. R.R. Co. v. Green*, 110 Md. 32, 71 A. 986 (1909), and are not the only reasons why liability may be imposed.

> "Besides the duty of avoiding negligent misconduct, the carrier is under an absolute duty to protect his passengers from the misconduct of its servants or agents. The decisions are often rested on the ground that the action of the servant or agent was within the scope of his employment, and in many cases this may be true; but when the act in question had no relation to the carrier's business and, though occurring in the carrier's vehicle or station was due wholly to private interests or motives of the servant, the carrier's liability must be rested on the broader ground previously discussed in

connection with innkeepers." [*i.e.,* strict liability] 10 Williston, *Contracts* § 1123 (3d Ed. 1967) at 300.

Professor Prosser similarly reasons that the carrier's responsibility to its passenger is a classic example of vicarious liability, Prosser, *Torts* § 69 (3d Ed. 1964) at 477-78, while Restatement, *Agency* 2d (1958) § 214 adopts the idea that the carrier's responsibility to the passenger is a non-delegable duty, for the breach of which the carrier is liable:

> "A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty."

Comment e to § 214 says, "* * * In situations coming within the rule stated in this Section, the fact that the one to whom the performance of the duty is delegated acts for his own purposes and with no intent to benefit the principal or master is immaterial.", thus laying to rest the idea that the doctrine of *respondeat superior* is controlling in such situations.

This approach, which we regard as correct, has been followed in *Simpson v. Broadway-Manhattan Taxicab Corp.,* 203 Va. 892, 128 S.E.2d 306 (1962); *Berger v. Southern Pacific Co.,* 144 Cal. App. 2d 1, 300 P. 2d 170, 60 A.L.R.2d 1104 (1956); *Radio Cabs, Ltd. v. Tolbert,* 86 Ga. App. 181, 71 S.E.2d 260 (1952); *O'Brien v. Public Service Taxi Co.,* 83 F. Supp. 55 (D.M.D. Pa. 1949), *aff'd* 178 F. 2d 211 (3d Cir. 1949); *Haser v. Pape,* 77 N. D. 36, 39 N.W.2d 578 (1949); *Co-Op Cab Co. v. Singleton,* 66 Ga. App. 874, 19 S.E.2d 541 (1942); *Jenkins v. General Cab Co. of Nashville, Inc.,* 175 Tenn. 409, 135 S. W.2d 448 (1940); *Korner v. Cosgrove,* 108 Ohio St. 484, 141 N. E. 267, 31 A.L.R. 1193 (1923). *See also,* Wheat, *The Liability of the Carrier to Passengers for Injuries by its Servants,* 14 Mich. L. Rev. 626 (1916) for a discussion of the development of the law in the field.

Since Miss St. Michelle's declaration alleged facts which, if proved to the satisfaction of the jury, would support a finding

that the contract of transportation had not ended, the omission of an affirmative allegation that the driver was acting within the scope of his employment did not make the declaration demurrable.

Under our view of the case, we need not reach the contention that the trial court erred in sustaining the demurrer without leave to amend.

> *Order sustaining demurrer to first count of declaration and entering judgment absolute in favor of defendant reversed. Case remanded with direction to overrule defendant's demurrer and for further proceedings. Costs to be paid by appellee.*