# Richmond.

## Norfolk and Western Railway Co. v. Brame.

### March 11, 1909.

1. Appeal and Error—*Admission of fact—Exclusion of Evidence Tending to Prove Same Fact.*—Where the plaintiff, in an action against a railroad company for an assault and battery upon him by a brakeman, testifies that he was very drunk when he boarded the train, the excluson of testimony as to his drunken and disorderly condition before boarding the train is not reversible error.

2. Carriers—*Railroads—Assault on Passenger by Trainmen—Abusive Language—Respective Rights of Carrier and Passenger.*—It is the duty of those in charge of a passenger train to preserve order and to remove disorderly persons to such safe and convenient place as will prevent annoyance to passengers and trainmen, and it may be to stop the train and eject disorderly persons therefrom, employing only such force as is necessary to accomplish these ends, and overcome any resistance offered; but they have no right to commit any unnecessary violence, and if they do their principal must answer in damages. Insulting words and epithets cannot justify an assault upon a passenger by those in charge of the train, though they may be given in evidence in mitigation of damages. Those in charge of a train have the right to protect themselves against an injury, actual or threatened, and if in so doing, an injury is inflicted upon the passenger under such circumstances that he could not recover damages against the company's servant, neither can he recover against the company. But the evidence must at least show a present injury reasonably to be apprehended, in order that the company may escape liability for an asault and battery upon a passenger by one of those in charge of the train, however abusive may have been the language or reprehensible the conduct of the passenger.

Error to a judgment of the Circuit Court of Henry county

in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case. The instructions given by the trial court were as follows:

"A. The court instructs the jury, that those in charge of a passenger train have the right to preserve order, remove disorderly passengers to such safe and convenient places as will prevent annoyance to passengers or trainmen, and even to stop the train and eject such disorderly persons therefrom, but in exercising such right those having charge of such train have only the right to employ such force as may be necessary to accomplish these ends and to overcome any resistance which may be made by such disorderly passengers. They have no right to commit unnecessary violence on an offending passenger, and if they do so their principal must answer in damages.

"B. The court further instructs the jury, that mere insulting words and epithets from an intoxicated passenger will not justify an assault by those in charge of a train, and will not release the carrier from liability for such assault. But insulting words and epithets which provoke an assault must be taken into consideration in mitigation of damages.

"C. The court further instructs the jury, that if they believe from the evidence that Brakeman Hite, acting under the authority of Conductor Johnson, carried the plaintiff into the smoking compartment because of turbulent conduct, and that while in said smoking compartment the said brakeman violently assaulted said Brame and broke his jaw bone and choked him without any further misconduct on the part of said Brame, or without his doing anything which the brakeman could reasonably have construed into an effort or intent to draw a weapon or make an attack on himself, they must find for the plaintiff, and assess his damages at such figures as will compensate him for his physical and mental sufferings and physical injuries oc-

casioned by such assault, not exceeding the amount of $2,000, claimed in the declaration.

"I. The jury are instructed that it is the duty of the Norfolk and Western Railway Company, and of the conductors and brakemen on its passenger trains, to use every reasonable means in their power for the comfort and peace of the orderly and well-behaved passengers on such trains, and to prevent profanity and vulgarity in their presence by drunken or disorderly persons, and that in the performance of such duties they not only have the right but it is their duty to use all reasonable means and necessary force to remove from a car in which there are orderly, peaceable and well-behaved passengers, and especially ladies, any passenger who is drunk and acting in a disorderly, profane or vulgar manner.

"II. If the jury believe from the evidence that the plaintiff was upon defendant's train in a drunken condition; that he acted in a disorderly, vulgar and profane manner, cursed the conductor and the brakeman, and entered into a car where a lady and several well-behaved passengers were traveling, and, while in such car, engaged in cursing and profanity, or talked in a loud and boisterous manner, it was the duty of the conductor and brakeman to remove him from the car, and it was their right to use all the force reasonably necessary therefor; that if they believe the conductor and brakeman did remove him by force from the body of the car into the smoking compartment but used no more force than was reasonably necessary, the defendant company is not liable in damages for such removal. And if they believe that after he was so removed he did anything which reasonably caused the brakeman to believe that the plaintiff then and there intended to make an attack upon him with a weapon, or with his fists, the brakeman had the right to do what seemed reasonably to be necessary to protect himself against such apparently threatened attack, whether the same was real or not, provided he believed it was real, and for any injury done the plaintiff by the brakeman in using reason-

able means to defend himself, the defendant is not liable, and if the jury believe that only such means were used, and believe the other matters as supposed in this instruction, they should find for the defendant.

"III. The jury are instructed that a brakeman or conductor on a railroad train has the same right to protect himself against an assault, or an actual or threatened injury, that any other person has, and that where a brakeman or conductor injures a person in an effort to protect himself, under such circumstances that such person could not recover damages of him, the railroad company is not liable to such persons for the acts of the conductor or brakeman.

"IV. If the jury would not find a verdict for the plaintiff upon the evidence in this case if he were suing the conductor and the brakeman, or either of them, for the injury complained of, they should find for the defendant."

*Phlegar & Powell, Theodore W. Reath* and *H. G. Mullins,* for the plaintiff in error.

*N. E. Smith* and *Gravely & Gravely,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is a suit instituted by William J. Brame to recover damages from the Norfolk and Western Railway Company, on account of injuries received in consequence of an assault made upon him by a brakeman of that road, while a passenger upon one of its trains.

The evidence shows that Brame entered the train of the Norfolk and Western Railway Company in an intoxicated condition. As some of the witnesses express it, he was "violently drunk," and some disagreement having arisen between himself

and the conductor as to the payment of a cash fare, he not having procured a ticket, he became very disorderly and abusive, using vulgar and profane language, and conducting himself in a manner most insulting to the officials of the train, and offensive to its respectable passengers, one of whom was a lady. Thereupon, the conductor directed the brakeman to remove him from the passenger coach into the smoker, which the brakeman proceeded to do; and while the plaintiff, in his testimony, says that in the process of his removal he was kicked and cuffed and much mishandled, we think it may be taken as established that no greater force was exercised than the occasion justified, until the brakeman followed by the conductor · and pushing Brame before him carried him into the smoker, and there, as a passenger states who was in a position to see what occurred, Brame was thrown roughly into a seat. He was still very drunk, and seems to have made some movement of his hand, 'which the brakeman says he understood to be an effort to draw a weapon from his hip pocket. Whereupon, the brakeman, who is shown to have been a very powerful, active young man, struck Brame upon the jaw, breaking it and loosening a tooth, grasped him by the throat and called upon the conductor to search and disarm him. The conductor did search him, but found no weapon upon his person of any description. A disinterested passenger states that he saw Brame put his hand back toward his hip pocket and as far as his side pocket, "very slowly as if to go after his handkerchief, and said, 'I'll see you later;' " and that thereupon, Hite, the brakeman, "turned and hit him and knocked him against the window sill, and Mr. Johnson searched him."

These are the material facts established by the testimony.

During the course of examination of the witnesses, several exceptions were taken to the rulings of the court, which are now assigned as error. The action of the court in granting and refusing instructions, and in overruling plaintiff in error's motion to set aside the verdict and grant a new trial, are also assigned as error.

The exceptions to the evidence are to the refusal of the court to permit the defendant to prove that plaintiff had been drinking before he entered the train; that when under the influence of liquor he was quarrelsome; and that he was so disorderly in the store-room of a Mr. Penn during the afternoon of that day that he was requested to leave the store, and arrangements were made to expel him had he not voluntarily left. Another exception is to the action of the court in excluding proof that when the plaintiff applied for a ticket of the station agent he was refused upon the ground that he was too drunk to get on the train. Another exception is to the exclusion of the statement of the witness, Reynolds, that he got upon the train to collect a bill due him by Brame, whereas, Brame had stated in his evidence that Reynolds had gotten upon the train at his invitation.

If it were conceded that, with respect to one or more of these exceptions, the ruling of the court was erroneous, it would not be error for which the judgment complained of should be reversed. If Brame's condition upon the train left any room for controversy or question, it might be that his condition a short time before he entered the train would be of value in enabling the jury to reach a right conclusion as to his condition and his conduct while upon the train; but his own testimony shows, and there is no room to doubt, that he was very drunk; that he was disorderly in his conduct, abusive and insulting to the officers of the train, and used language so indecent and offensive to respectable passengers as justify his removal from the day coach. But the crisis of the situation is reached when, having removed him on account of his gross misconduct to the smoking compartment, the brakeman threw him roughly upon a seat, and struck him a blow which inflicted upon him a serious injury. His removal was justified by his conduct. The company would have been within its rights if he had been ejected from the train. But the question is, was the brakeman justified in making a violent assault upon him?

The abusive language used by Brame, while reprehensible, did not excuse the assault.

· In section 704 of Bishop on Criminal Law, it is said: "No words, however provoking or insulting, or mere verbal threat, will so far justify a blow returned, though in actual passion, as to reduce the killing to the lower degree.   It is plain, however, that words may give character to acts; and, in matter of evidence, are admissible to explain them.   Hence, if there is a present demonstration of impending violence, which alone would be insufficient, acompanying words, added to the physical acts, may create such peril as will justify the killing of the aggressor, or reduce it to manslaughter."

As it is commonly stated, words do not justify blows, though doubtless insulting language may be shown as extenuating the assault, and in mitigation of the damages sustained.

The turning point in this case is whether or not the insulting language was accompanied by any act to which the words used gave character, and which might reasonably have caused the brakeman to believe that the plaintiff then and there intended to make an attack up him; in which case, of course, he would have had the right to protect himself against such apparently threatened attack, whether the same was real or not.

When we turn to the instructions, we find that they correctly propound the law as applied to the two conflicting views of the evidence presented on behalf of the plaintiff and the defendant.

The jury were told that those in charge of a passenger train have the right to preserve order, to remove disorderly passengers to such safe and convenient place as will prevent annoyance to passengers or trainmen; to stop a train and eject disorderly persons therefrom, employing only such force as may be necessary to accomplish these ends; and to overcome any resistance which may be made by such disorderly passengers; but that the officials of the train have no right to commit unnecessary violence, and if they do their principal must answer in damages; that insulting words and epithets from an intoxicated passenger will not justify an assault by those in charge of the train; but insulting words and epithets which provoke an assault must be

taken into consideration in mitigation of damages; that a brakeman or conductor on a railroad train has the same right to protect himself against an assault, or an actual or threatened injury, that any other person has, and that where a brakeman or conductor injures a person in an effort to protect himself, under such circumstances that such person could not recover damages of him, the railroad company is not liable to such person for the acts of the conductor or brakeman; and that if the jury would not find a verdict for the plaintiff, if he were suing the conductor and brakeman, or either of them, they must find for the defendant.

These principles are fully sustained by the authorities.

In Hutchinson on Carriers (3rd ed.), at section 1093, it is said: "The passenger is entitled not only to every precaution which can be used by the carrier for his personal safety, but also to respectful treatment from him and his servants. From the moment the relation commences, the passenger is, in a great measure, under the protection of the carrier, even from the violent conduct of other passengers, or of strangers who may be temporarily upon his conveyance. But as against the assaults and violence of his servants, the passenger has the right to claim an absolute protection, and the carrier will undoubtedly be held responsible for any unnecessary personal abuse or violence of which they may be guilty in their treatment of the passenger whilst engaged in the discharge of their assigned and appropriate duties, although such abuse may consist in an assault or battery upon the person of the passenger, and may be wholly unauthorized by the carrier and prompted by the vindictive feelings of the servant towards the passenger. And it is undoubtedly well settled law that, when an assault or battery by the carrier's servant occurs upon the carrier's vehicle, the carrier may be held responsible even when the servant has seemingly departed from the line of his duty, and has committed the assault or the personal violence upon the passenger aside from and under circumstances wholly unconnected with the discharge of such duty."

And at section 1094 it is said: "Passengers on railroad trains are peculialrly under the control of the carrier's agents, and are practically helpless when compelled to defend themselves against their abuse or assaults. It is consequently necessary to hold a railroad company to a strict accountability for any acts of its servants on a train which tend to injure or humiliate the passenger, even though such acts may be malicious and unauthorized. This has been held to be true not only as to conductors, who are in charge of a train, but also as to brakemen."

We have held in *Norfolk & Western Ry. Co. v. Birchfield,* 105 Va. 809, 54 S. E. 879, that, "in case of a threatened assault upon a passenger by a fellow passenger, it is the duty of the company's employees to protect the party threatened from injury, and if they negligently fail to do so, the carrier is liable for the consequences. The conductor has the power, and it is his duty to preserve order on the train; if necessary, stopping the train and calling to his assistance all the train employees and such passengers as are willing to assist him. Until, at least, he has put forth the forces at his disposal, he has no right to abandon the scene of conflict. In order that conductors may be clothed with authority commensurate with their duty, they are in this State made conservators of the peace by Code, 1904, section 1294-d, clause 10."

If it be the duty of those in charge of a train to protect passengers from their fellow passengers, how much more is it their duty to exercise self-control and restraint in their own conduct. If mere words will not justify an assault as between those who stand upon a footing of equality and owe no special duty one to the other, how much more true is it as between those in charge of a train and a passenger, who is in a large degree under the control of the carrier's agents, and entitled at their hands to respectful treatment and to protection from all injury. The conduct of a passenger may be exasperating, as it doubtless was in this case. It may render it difficult for the agent of the

carrier properly to discharge his duty.    But this does not excuse or justify his failure to perform it.

Being of opinion that there is no reversible error with respect to the admission or exclusion of testimony, and that the law of the case was properly placed before the jury, it remains to be considered whether or not the verdict is contrary to the evidence.

As we have said, the crisis of the case occurred when the brakeman roughly threw the plaintiff into a seat, after removing him from the day coach.    We have seen that the insulting language used by the drunken passenger did not justify the assault, while it was proper for the consideration of the jury in mitigation of damages.    The attention of the jury was drawn by the instructions to the two conflicting theories with respect to the evidence at the instant of the assault.    Did the brakeman have a reasonable ground to expect that the plaintiff was about to make an attack upon him?    The evidence shows that the plaintiff was almost helplessly drunk; that the brakeman, a powerful young man, had without difficulty removed him from one car to another, and placed him roughly in a seat.    There is evidence of a movement of the hand on the part of the plaintiff, to his side or hip pocket, but it was accompanied by the statement, "I'll see you later," which would not indicate a present purpose to make an assault.    The jury, with their minds specifically drawn to the precise point in issue were of opinion that the brakeman had no reasonable ground to anticipate an attack upon him, and rendered a verdict in favor of the plaintiff, which the court refused to set aside, and we are of opinion that its judgment should be affirmed.

*Affirmed.*