## Richmond

FANNIE MAE SIMPSON v. BROADWAY-MANHATTAN TAXICAB CORPORATION, ET AL.

December 3, 1962.

Record No. 5501.

Present, All the Justices.

*Richard F. Broudy* and *Joseph E. Baker* (*Broudy, Baker & Broudy,* on brief), for the plaintiff in error.

*Paul M. Lipkin* (*Goldblatt & Lipkin,* on brief), for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This action was brought by Fannie Mae Simpson to recover damages from the Broadway-Manhattan Taxicab Corporation and Robert Barnes, Jr., on account of injuries, which she alleges were received in consequence of an attack made upon her by Robert Barnes, Jr., an employee of the Broadway-Manhattan Taxicab Corporation, a common carrier, when she was a paying passenger in one of the taxicabs of the defendant corporation which was being operated by Barnes.

The taxicab company, sometimes hereinafter referred to as defendant or the corporation, filed an answer and grounds of defense denying liability. It also filed an affidavit denying that Barnes, at the time of the alleged assault, was "either acting as an employee of the defendant, or acting within the scope and course of his employment."

At the conclusion of plaintiff's evidence, the corporation moved to strike it. The record does not show the grounds for the motion. However, the motion was sustained, and summary judgment was entered for the corporation. Thereupon, plaintiff took a non-suit as to the other defendant, Robert Barnes, Jr., and the jury was discharged from further consideration of the case. The plaintiff then appealed from the ruling of the court.

The facts may be stated as follows:

Broadway-Manhattan Taxicab Corporation is the owner and operator of a fleet of taxicabs for hire in the city of Norfolk. Robert Barnes, Jr., was a taxicab driver employed by that corporation. On April 19, 1960, about 5:00 p. m., plaintiff called the corporation and asked that a taxicab be furnished her. Pursuant to her request, a taxicab was sent to plaintiff's address, and there the plaintiff and two other passengers entered the cab. The cab proceeded to Godfrey street in Norfolk, where one passenger alighted. The cab driver was then told to take the plaintiff and plaintiff's seven-year old niece to a certain destination.

According to the plaintiff, she and the little girl occupied the back seat of the taxicab. Shortly after they started, Barnes said to her, "Hum, I ain't got no money and I ain't made no money today." Plaintiff replied, "Well, what do you mean. What, you think that I'm going to give you some money." Thereupon, Barnes struck her about her head and face with what she thought was "like some instrument." She said, "Everything went red," she became unconscious, and she was thereafter taken to a hospital by Barnes.

Barnes, called as an adverse witness, testified that he struck the plaintiff twice in her face with his bare hands. He said this occurred about 11:45 p. m., when she was sitting in the front seat of the taxicab with him. He claimed that he had known Mrs. Simpson since November, 1959; had visited her at times; had taken her twice on trips to North Carolina; and had been "intimate" with her on one occasion in January, 1960. He said he took plaintiff to a hospital about 1:00 a. m. on April 20, 1960, and that he was delayed because she was for "the most part of that time screaming in a fit of rage." While "she appeared to slump over," he did not know whether or not she ever became unconscious.

The trial court gave no reason, in its order, for striking the evidence. The corporation, in its brief, contends that: (1) The court was justified in its ruling because the evidence showed that Barnes' conduct had no connection with his employment, but was predicated upon his prior personal relationship with the plaintiff; and that (2) plaintiff's testimony was incredible and unworthy of belief.

The motion to strike was, in effect, a motion for a summary judgment. *Clark* v. *Kimnach*, 198 Va. 737, 746, 96 S. E. 2d 780; *Goode, Adm'r* v. *Courtney*, 200 Va. 804, 807, 108 S. E. 2d 396, 399; *Marshall* v. *Dean*, 201 Va. 699, 703, 112 S. E. 2d 895.

Rule of Court 3:20, providing for summary judgment, also provides that it "shall not be entered if the amount of damages or any other material fact is genuinely in dispute." As we have heretofore said, the Rule "was adopted to provide trial courts with authority to bring litigation to an end at an early stage, when it clearly appears that one of the parties is entitled to judgment within the framework of the case as made out by the pleadings, the pre-trial conference, and the admissions in depositions. * * * (I)t does not substitute a new method of trial where an issue of fact exists." * * * It " 'provides for summary judgment in those cases that cannot be reached by demurrer in which the only dispute concerns a pure question of law. It applies only to cases in which no trial is necessary because no evidence could affect the result.' The motion for summary judgment is appropriate 'after the parties are at issue' and is not intended as a substitute for a demurrer, a demurrer to the evidence or a motion to strike. When the motion for summary judgment is appropriate it should state the grounds upon which it is filed and otherwise meet the requirements of the Rules with respect to pleadings." *Carwile* v. *Richmond Newspapers*, 196 Va. 1, 5, 82 S. E. 2d 588, 590; *Goode,*

*Adm'r* v. *Courtney*, 200 Va., *supra,* page 807; *Marshall* v. *Dean*, 201 Va., *supra,* page 703.

In *Norfolk & Western Railway Company* v. *Brame*, 109 Va. 422, 429, 63 S. E. 1018, we set out the duty and responsibility of a common carrier when a passenger of the carrier is assaulted by its servant. There quoting from Hutchinson on Carriers (3rd ed.), § 1093, we said:

"The passenger is entitled not only to every precaution which can be used by the carrier for his personal safety, but also to respectful treatment from him and his servants. From the moment the relation commences, the passenger is, in a great measure, under the protection of the carrier, even from the violent conduct of other passengers, or of strangers who may be temporarily upon his conveyance. But as against the assaults and violence of his servants, the passenger has the right to claim an absolute protection, and the carrier will undoubtedly be held responsible for any unnecessary personal abuse or violence of which they may be guilty in their treatment of the passenger whilst engaged in the discharge of their assigned and appropriate duties, although such abuse may consist in an assault or battery upon the person of the passenger, and may be wholly unauthorized by the carrier and prompted by the vindictive feelings of the servant towards the passenger. *And it is undoubtedly well settled law that, when an assault or battery by the carrier's servant occurs upon the carrier's vehicle, the carrier may be held responsible even when the servant has seemingly departed from the line of his duty, and has committed the assault or the personal violence upon the passenger aside from and under circumstances wholly unconnected with the discharge of such duty.*" (Emphasis added.)

Our ruling in the above case is in accord with the overwhelming weight of authority. It is firmly established that a passenger is entitled to recover damages for mistreatment on the part of an employee of a common carrier not only where the assault was in the line of the employee's duty, but also where it was merely that of an individual and entirely disconnected with the performance of the employee's duties, if it occurred on the carrier's vehicle or during the existence of the carrier-passenger relationship. Ordinarily, an unprovoked assault upon a passenger is not within the scope of the taxicab driver's employment, but it is an act that is violative of the duty that the carrier owes through the driver. A passenger is entitled by virtue of the fact that he is a passenger to be protected not only against negligent acts of the carrier's employee, resulting from his omission to

perform the duty of the carrier to its passengers, but also to protection against an unwarranted assault committed on his person by the employee during the continuance of the carrier-passenger relationship.

A taxicab company engaged in the public transportation of passengers is a common carrier, and the same rules and measure of responsibility which apply to owners or operators of common carriers with respect to the acts of their servants in the transportation of passengers apply to motor traffic. *Korner* v. *Cosgrove,* 108 Ohio St. 484, 141 N.E. 267, 31 A. L. R. 1193; *Haser* v. *Pape,* 77 North Dakota 36, 39 N. W. 2d 578-582; *Southeastern Greyhound Corporation* v. *Graham,* 69 Ga. App. 621, 26 S. E. 2d 371; *O'Brien* v. *Public Service Taxi Company* (1949 C. A. 3d Pa.), 178 F. 2d 211, affirming [D. C.] 83 F. Supp. 55; *Jenkins* v. *General Cab Company,* 175 Tenn. 409, 135 S. W. 2d 448 (7 N. C. C. A.-N. S. 58); *Brockway* v. *Mordenti,* 199 Misc. 898, 103 N. Y. S. 2d 621; *Hairston* v. *Atlantic Greyhound Corporation,* 220 N. C. 642, 18 S. E. 2d 166; 10 Am. Jur., Carriers, §§ 1447 and 1448, page 263 *et seq.;* 37 Am. Jur., Motor Transportation, §§ 154 and 155, pages 598, 599; 13 C. J. S., Carriers, § 691, page 1280 *et seq.;* Annotation, "Duty and liability of carrier of passengers for hire by automobile," 31 A. L. R. 1206, 45 A. L. R., 302, and Annotation, "Employer's liability for assault by taxicab or motor bus driver," 53 A. L. R. 2d, page 724 *et seq.*

The courts and the authorities above cited note the distinction between the general rule that liability of employers for injuries due to wrongful acts of their servants may, ordinarily, be imposed only when the relationship of master and servant has been shown to exist at the time and in respect of the very transaction out of which the injuries arose, and the rule in those cases where the duty owing from the master to the injured person grows directly out of the relationship of carrier and passenger. An unwarranted assault committed on a passenger by an employee while on duty, whether within the line of his employment or not, constitutes a breach of the duty of the carrier to protect the passenger, and it is the breach of such duty that imposes liability upon the carrier. *Norfolk & Western Railway Company* v. *Brame,* 109 Va., *supra.*

██ In a number of recent cases, we have discussed at length the test to be applied in determining the credibility of witnesses and the weight to be given their testimony.

In *Daniels* v. *Transfer Co.,* 196 Va. 537, 544, 84 S. E. 2d 528; *Simpson* v. *Commonwealth,* 199 Va. 549, 558, 100 S. E. 2d 701; and *Thompson* v. *Letourneau,* 199 Va. 560, 566, 101 S. E. 2d 1, we

approved the following statement from *Burke* v. *Scott*, 192 Va. 16, 23, 63 S. E. 2d 740, 744, where Mr. Justice Buchanan, speaking for the Court, said:

"* * * To be incredible, evidence must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ."

See also *Kirby* v. *Moehlman*, 182 Va. 876, 883, 30 S. E. 2d 548; *Clayton* v. *Taylor*, 193 Va. 555, 560, 69 S. E. 2d 424; *Anchor Motor Freight* v. *Paul*, 198 Va. 480, 486, 95 S. E. 2d 179.

The credibility of witnesses is for the jury and not for the court, unless their testimony is inherently incredible, contrary to human experience or to the laws of nature. Where the evidence is such that reasonable men should not differ as to a conclusion, the question is one of law for the court, and conversely, if the evidence is such that reasonable men may differ, the question is one of fact for the jury. 7 Mich. Jur., Evidence, § 278, page 664, *et seq.*, and cases there cited; 20 Am. Jur., Evidence, § 1183, page 1033, *et seq.*

We cannot say that the testimony of the plaintiff was too extraordinary and impossible to admit of credit, or so manifestly false that reasonable men ought not to believe it. Her testimony was not in conflict with the uniform course of nature, or with fully established facts. On material facts it was not contradicted. Moreover, it was supported both by the admissions of the taxicab driver and by his failure to give any reason or excuse for his conduct.

The lack of merit in each of defendant's contentions becomes apparent in the light of the rules and principles stated above. Applying the same rules and principles, the trial court erred in sustaining the motion to strike and entering judgment for the defendant corporation.

The judgment as to Broadway-Manhattan Taxicab Corporation is reversed and set aside; and the case remanded for a new trial.

*Reversed and remanded.*