# CIRCUIT COURT OF FAIRFAX COUNTY

Joon C. Ahn

v.

C2 Educational
Systems, Inc., et al.

April 25, 2012

Case No. CL-2011-615

By Judge Charles J. Maxfield

This matter came before the Court on April 6, 2012, on Defendants' Motion to Dismiss and/or Motion for Summary Judgment to Count IV of the Second Amended Complaint. Upon consideration of the respective briefs, oral arguments, and controlling authorities, the motion is denied.

*Factual Background*

As the Defendants C2 Educational Systems, Inc., Cambridge Learning of Georgia, Inc., and Bobby Kim (collectively "Defendants") did not introduce any evidence, the motion relies entirely upon the factual assertions of the Second Amended Complaint. The Second Amended Complaint alleges as follows.

In July 2008, Plaintiff Joon C. Ahn attended an investment seminar held by C2 Educational Systems, Inc. ("C2 Education") and Bobby Kim. C2 Education is a Virginia company with its principal place of business in Duluth, Georgia.

Defendants advertised their investment seminar throughout the Northern Virginia area, including in a publication known as the *Korea Times*. At the investment seminar, held in Tysons Corner, Virginia, C2 Education, through its agent Kim, represented that C2 Education was expanding overseas into Korea through C2 Future, Ltd. ("C2 Future"). During the seminar, Kim stated C2 Future needed to raise $40 million to open education centers throughout Korea. C2 Education stated that it hoped to raise twenty of the $40 million from American investors. If the requisite capital could

not be raised, C2 Education promised to cover any capital shortfall. Kim established a minimum contribution for an American investor of $200,000. According to Kim, the par value of the stock would be $5, and each investor would receive 20,000 shares of C2 Future stock. Kim also stated C2 Future would be registered on the Korean Stock Exchange within a year.

C2 Future was never structured or capitalized; the entire scheme was fraudulent and designed to improperly enrich the Defendants. Plaintiff conducted extensive inquiry and investigation regarding the potential investment in both the United States and Korea. Following extensive investigation and Kim's confirmation C2 Future was fully functioning, Plaintiff signed a contract to purchase shares of C2 Future on November 28, 2008. On December 3, 2008, Plaintiff wired $200,000 from his Korean accounts to an account for C2 Future in Seoul, South Korea.

Although Plaintiff paid for his securities in December of 2008, he did not receive stock certificates evidencing his ownership, dividends, or stock reports for the next ten months. In actuality, C2 Future had never existed and had never been capitalized. On January 15, 2010, Plaintiff sent C2 Future a letter demanding issuance of his stock certificates. In response to this letter, C2 Education issued a stock certificate, signed by Kim, evidencing Plaintiff's purported ownership in C2 Korea, L.L.C. ("C2 Korea"). C2 Korea is an American holding company. C2 Education uses C2 Korea to hold funds that C2 Education invests overseas. C2 Korea has no assets or operating business, and its stock is worthless. Plaintiff rejected the offer of C2 Korea stock and demanded the return of his investment. Rather than refund the investment, Kim characterized Plaintiff's investment as a "loan" that was used to pay "office expenses" for existing schools.

Defendants' demurrer to Count IV was overruled on May 6, 2011. Following a second demurrer that was also overruled, Defendants filed a Plea in Bar to Count IV. No contested fact was addressed by the Plea in Bar, and it was treated as a demurrer. The Plea in Bar was denied by written opinion on October 20, 2011▌ Subsequently, Defendants filed an Answer to Count IV denying all the assertions Plaintiff made therein.

Again without new facts, but a different legal theory, Defendants seek to have Count IV dismissed. This is, in effect, an untimely demurrer. The Virginia Supreme Court has consistently cautioned parties that a motion for summary judgment cannot be used as a substitute for a demurrer. *See, e.g., Simpson v. Broadway-Manhattan Taxicab Corp.*, 203 Va. 892, 894, 128 S.E.2d 306, 309 (1962); *Marshall v. Dean*, 201 Va. 699, 703, 112 S.E.2d 895, 898 (1960); *Carwile v. Richmond Newspapers*, 196 Va. 1, 5, 82 S.E.2d 588, 590 (1954). Because Defendants provided no evidence in support of their Plea in Bar, this Court treated the Plea in Bar as a demurrer. *Ahn v. C2 Educ. Sys.*, 83 Va. Cir. 457 (Fairfax 2011). Defendants also provided no evidence in support of their motion for summary judgment and asserted

they were entitled to judgment based on the facts in the Plaintiff's Second Amended Complaint. For all intents and purposes, Defendants' motion was essentially a fourth demurrer. As no procedural objection was raised by the Plaintiff, the Court will address the motion on its merits.

## Arguments

Defendants assert Plaintiff's claim for violation of the Virginia Securities Act is precluded by the recent Supreme Court ruling in *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). According to *Morrison*, United States securities law can only be applied when the sale of a security is made in the United States or when the sale involves a security listed on an American stock exchange. *Id.* at 2886. Defendants contend the entire transaction between Plaintiff and Defendants occurred outside of Virginia and that the Virginia Securities Act cannot be applied extraterritorially to reach this transaction. Defendants further argue application of the Virginia Securities Act to a non-Virginia transaction would violate both the Dormant Commerce Clause and Supremacy Clause of the United States Constitution.

In the opposition to the Motion for Summary Judgment, Plaintiff contends that *Morrison* is not controlling because the facts of this case are distinguishable from *Morrison*. Plaintiff further contends that Kim made fraudulent statements in Virginia during the investment seminar and the Virginia Securities Act can properly regulate such conduct in Virginia.

## Analysis

### I. Standard of Review for Summary Judgment

Summary judgment can be granted if a party is entitled to judgment as a matter of law. Va. Sup. Ct. R. 3:20. Summary judgment cannot be granted if "any material fact is genuinely in dispute." *Id.; see also Slone v. GMC*, 249 Va. 520, 522, 457 S.E.2d 51 (1995). If material facts are disputed, summary judgment is inappropriate, and the final determination of the case should be made by a jury. *Owens v. Redd*, 215 Va. 13, 14-15, 205 S.E.2d 669, 670-71 (1974); *Five Lakes, Inc. v. Randall, Inc.*, 214 Va. 4, 5, 196 S.E.2d 906, 906-07 (1973). All facts and inferences must be viewed in the light most favorable to the nonmoving party, and the moving party has the burden of establishing that no material facts are in dispute. *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 647, 604 S.E.2d 403, 404-05 (2004) (citing *Carson v. LeBlanc*, 245 Va. 135, 139-40, 427 S.E.2d 189 (1993)); *see also* Bryson, *Virginia Civil Procedure*, § 6.07 (4th ed. 2005). "Summary judgment is a drastic remedy which is available only where there is no material fact genuinely in dispute [ . . . ] It applies only to cases in which no trial is

necessary because no evidence could affect the result." *Shevel's, Inc.-Chesterfield v. Southeastern Associates, Inc.*, 228 Va. 175, 181, 320 S.E.2d 339, 342-43 (1984) (citing *Fire Assurance Corp. v. Cohen*, 203 Va. 810, 814, 127 S.E.2d 399, 402 (1962)).

## II. *Defendants' Motion for Summary Judgment for Plaintiff's Virginia Securities Act Claim*

Section 10(b) of the Securities and Exchange Act of 1934, as codified in Title 15 of the United States Code, prohibits the use of "any manipulative or deceptive device" in connection with the sale of security. 15 U.S.C. 78j(b) (2006). The Securities and Exchange Commission promulgated Rule 10b-5, which prohibits the employment of device, artifice, fraud, or untrue in connection with the sale of securities. 17 C.F.R. § 240.10b-5 (2012). Rule 10b-5 cannot regulate any conduct that Section 10(b) cannot validly regulate. *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869, 2881, 177 L. Ed. 2d 535 (2010) (citing *United States v. O'Hagan*, 521 U.S. 642, 651, 117 S. Ct. 2199, 138 L. Ed. 2d 724 (1997)).

The plaintiffs in *Morrison* were all Australian nationals who purchased shares of National Australia Bank, Ltd. ("National"). *Morrison*, 130 S. Ct. at 2875-76. National's securities are traded on the Australian Stock Exchange, Ltd., and various international stock exchanges, but National securities are not traded in the United States. *Id.* at 2875. In 1998, National purchased HomeSide Lending, Inc. ("HomeSide"), a Florida corporation that collected fees for servicing mortgages. *Id.* Although HomeSide appeared profitable from 1998 to early 2001, between July and September 2001, National had to write-down its investment in HomeSide by $2.2 billion after discovering HomeSide's executives fraudulently manipulated HomeSide's financial models. *Id.* at 2875-76. The plaintiffs purchased their stock between 2000 and 2001 before any write-down by National. *Id.* at 2876. After discovering the fraud, plaintiffs filed suit in the Southern District of New York against, among other defendants, National, HomeSide, and HomeSide executives for violations of Section 10(b) and Rule 10b-5. *Id.*

Securities transactions involving "(1) *foreign* plaintiffs . . . suing (2) a *foreign* issuer in an American court for violations of American securities based on securities transactions in (3) *foreign countries*" are known as "foreign-cubed" or "f-cubed" transactions. *Id.* at 2894, n. 11 (emphasis original) (citing *Morrison v. National Bank Australia, Ltd.*, 547 F.3d 167, 172 (2d Cir. 2008)). Rather than adopting the Second Circuit's test focusing on where the fraud occurred or produced effects, the Supreme Court adopted a transactional test limiting the scope of Section 10(b) to either purchases or sales made in the United States or to stocks listed on American stock exchanges. *Id.* at 2886. Because the *Morrison* plaintiffs satisfied neither

of these prongs, their suit was dismissed for failure to state a claim. *Id.* at 2888.

Virginia adopted the Virginia Securities Act with a primary purpose of "suppress[ing] the sale of stocks of little or no value." *Stevens v. Abbott, Proctor, & Paine,* 288 F. Supp. 836, 845 (E.D. Va. 1968). The Virginia Securities Act generally prohibits conduct within Virginia to the same degree as the Securities and Exchange Act proscribes nationally. Va. Code Ann. § 13.1-501 et seq. The Virginia Securities Act prohibits the use of "device, scheme, or artifice" or untrue statements to defraud purchasers of securities. *Id.* at § 13.1-502. The Virginia Securities Act also proscribes the use fraud or untrue statements when advising others about the worth of securities. *Id.* at § 13.1-522(B). Any person who violates the Virginia Securities Act via sale or advice can be held liable for damages. *Id.* at § 13.1-522(C).

Federal securities law and the Virginia Securities Act seek to achieve the same end by the same means, the prevention of fraud through disclosure and regulation. *Andrews v. Browne,* 276 Va. 141, 147-48, 662 S.E.2d 58, 62 (2008). Based on these similarities, the Virginia Supreme Court has construed the Virginia Securities Act in the same way federal courts interpret the 1933 and 1934 Securities and Exchange Act. *See Andrews v. Browne,* 276 Va. 141, 146-49, 662 S.E.2d 58, 61-63 (2008) (analogizing the Virginia Securities Act to the 1933 and 1934 Securities and Exchange Act); *see also Dunn v. Borta,* 369 F.3d 421, 429, n. 17 (4th Cir. 2004) (observing that Virginia applies federal interpretations of securities law when construing the Virginia Securities Act) (citing *Ascher v. Commonwealth,* 12 Va. App. 1105, 1122, 408 S.E.2d 906, 917 (1991)); *Diaz Vicente v. Obenauer,* 736 F. Supp. 679, 694 (E.D. Va. 1990) (noting the Virginia Securities Act is modeled after federal securities law). Consequently, if *Morrison* would preclude Plaintiff from pursuing relief under federal securities laws, then Plaintiff should also be precluded from seeking relief under the Virginia Securities Act.

The facts in this case, however, are readily distinguishable from those in *Morrison.* As previously discussed, *Morrison* involved an "f-cubed" transactions, foreign plaintiffs, foreign corporations, and foreign securities exchanges. The present transaction does not involve a single foreign entity. Defendants advertised in Virginia and came into Tysons Corner, Virginia, to solicit potential investors in C2 Education, an American company. Plaintiff, a Maryland resident, came to Virginia based on the Defendants' advertisements. Defendants made fraudulent representations in Virginia. Based on these fraudulent representations, Plaintiff investigated the potential investment opportunity. Although Plaintiff's diligence, wire transfer, and perhaps contract signing may have taken place in Korea, these facts are not dispositive. According to the Complaint, Plaintiff did not receive securities

in C2 Education. The only securities Plaintiff purportedly received were in C2 Korea, an American company.

As pleaded, this case satisfies both prongs of *Morrison*'s transactional test. This case involves domestic purchase and domestic securities. Ultimately, a Virginia company solicited investments in Virginia through a fraudulent scheme and subsequently delivered the stock of a domestic limited liability corporation to Plaintiff. As such, *Morrison* does not preclude Plaintiff from bringing a claim under the Virginia Securities Act. Defendants' Dormant Commerce Clause and Supremacy Clause arguments also fail under this factual analysis.

## Conclusion

Plaintiff alleges violations of the Virginia Securities Act in his Second Amended Complaint. *Morrison* does not preclude Plaintiff from bringing a claim arising out of the transaction under the Virginia Securities Act because no foreign security is involved. Defendants' Motion for Summary Judgment with respect to Count IV is denied.